AUTOMOBILE MECHANICS' LOCAL NO. 701, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff–Appellee,

v.

AUTO TRUCK, INC., Defendant–Appellant.

No. 97–3520.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1998.

Decided March 3, 1999.

Joseph M. Burns, Marisel A. Hernandez, Peter Hines (argued), Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for Plaintiff–Appellee.

Bruce L. Carmen (argued), Tom H. Luetkemeyer, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, for Defendant–Appellant.

Before MANION, KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The remarkable thing about this case is how little is in dispute between the parties, and how much this residual issue matters to them. At bottom, the case is

about whether the employer, Auto Truck, Inc., could limit an employee's right to reinstatement and back pay in apparent contradiction of an arbitral award in the employee's favor. We conclude that the district court properly understood both the scope and the limits of the arbitral award, and we affirm that court's order enforcing the award and awarding back pay to the employee.

## I

Christopher Urbanek was a journeyman painter who worked for Auto Truck. The company had a collective bargaining agreement ("CBA") with Automobile Mechanics' Local 701, of the International Association of Machinists and Aerospace Workers, AFL–CIO ("Local 701" or the union) that governed its relations with employees who, like Urbanek, were in the bargaining unit. As of early 1994, Urbanek began having problems on two independent fronts: absenteeism and other misconduct. On February 3, 1994, Auto Truck gave Urbanek a first warning under the progressive discipline system established by the CBA for his absenteeism in January. Although absenteeism is not grounds for immediate discharge under the CBA, an employee accumulating three warnings for excessive absenteeism within a 12–month period could be terminated or suspended at Auto Truck's option. On April 26, 1994, Urbanek allegedly defaced company property. The day after the alleged incident, April 27, 1994, Auto Truck issued Urbanek a second absenteeism warning for work missed during March. Then, on April 28, 1994, Auto Truck, exercising its option under Article XIV of the CBA to treat purposefully damaging company property as just cause for immediate termination, did just that and notified Urbanek that he was fired. Urbanek responded on April 29, 1994, with a grievance report that he filed with Local 701, describing the problem as follows: "Wrongful dismissal—Company discharge [sic] employee without just cause—Company gave employee un-just warning letter 4–27–94."

In due course, Urbanek's grievance proceeded to arbitration under Article XI of the CBA. When the parties appeared before Arbitrator Victor G. Smith on October 12, 1994, however, they did not submit the April 27 absenteeism warning as an issue to be decided. Instead, as Arbitrator Smith put it, the stipulated issue before him read: "Was the grievant discharged for just cause? If not, what shall be the remedy?" In his opinion and award issued November 16, 1994, Arbitrator Smith stated even more explicitly that the only question before him was whether or not to uphold Urbanek's discharge for defacing company property. He ruled that questions about absenteeism were either moot or beyond the scope of the arbitration.

The arbitrator found in favor of Urbanek, essentially because the arbitrator credited evidence that indicated that Urbanek had accidentally rather than deliberately gotten spray paint on some company property. The award ordered Auto Truck "to reinstate the grievant with full rights and benefits and to make him whole for all monies lost less any income received from unemployment benefits and/or other earned income from employment in the interim, if any." Responding to a request for clarification, Arbitrator Smith sent a letter on December 20, 1994, emphasizing once again that his decision did not address the absenteeism issue one way or the other.

If that were all that occurred, this would be a simple case indeed. The wrinkle that has led to this appeal relates to Auto Truck's continued efforts to charge Urbanek with absenteeism, while the grievance about defacing property was being processed. On May 10, 1994, after Urbanek's discharge, the company prepared a letter informing him that he had excessive absences in April 1994. In capital letters, the letter also cautions that three warning notices in a 12–month period "is cause for suspension or discharge." Urbanek as-

serts that he never received any such letter, and the copy furnished to us in the record shows a line for his signature in acknowledgment of receipt, but no signature.

Then, on May 18, 1994, Auto Truck sent the following letter to Mr. Boysen Anderson, the business representative of Local 701:

Dear Mr. Anderson:

We recently completed our attendance review for the month of April to determine if anyone had accumulated 3 or more incidents for lates and absences. Only one employee exceeded the limit in the month, Chris Urbanek. The warning notice for Chris Urbanek *would have been issued* to him except for the fact that he had already been terminated. This *would have* been his fourth warning notice in a 12 month period and *would have* constituted independent grounds for termination. Because his termination is the subject of a grievance, a copy of the warning notice is being sent to you for your information and files.

Sincerely,

by [signed] M. Gage McCotter, Treasurer

(Emphasis added. We note that although Auto Truck's May 18 letter refers to a "fourth" warning notice, only three such notices appear in the record, those dated February 3, April 27, and May 10. Because Article XIV of the CBA allows Auto Truck, at its discretion, to terminate or suspend an employee who has incurred three warning notices, whether Urbanek had three or four warnings is irrelevant for our purposes.) Auto Truck enclosed in this letter a copy of the May 10 warning notice the company prepared for Urbanek.

On January 6, 1995, in response to the arbitrator's award, Auto Truck wrote to Urbanek informing him that it was enclosing a payment of back pay for him covering only the period from April 29, 1994, through May 10, 1994. That letter explained the company's decision to limit the back pay so drastically as follows:

... [B]ecause we had issued a warning notice on May 10, 1994 for absenteeism, a copy of which was sent to Mr. Anderson on May 18, 1994, and because that warning notice was the third warning notice issued to you in 12 months for infractions other than the "just cause" discharge, the reinstatement ordered by the arbitrator would have terminated on May 10, 1994 due to the issuance of three warning notices in a 12–month period under the progressive discipline procedure of the collective bargaining agreement.

Because it was taking the position that Urbanek's job ended for independent reasons on May 10, 1994, Auto Truck never reinstated him.

## II

This led to Local 701's suit in federal court under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the arbitral award. Agreeing with a report and recommendation that then-Magistrate Judge Joan Gottschall had filed, Judge Manning granted the union's motion for summary judgment and denied the company's cross motion. She refused to reach the question whether Auto Truck had legitimately terminated Urbanek as of May 10, 1994, on account of his alleged absenteeism, because that issue was outside the scope of the arbitral decision and was thus not properly part of the proceedings to enforce the award. She then ordered Auto Truck to reinstate Urbanek, to pay him $38,597.50 in back pay, and to contribute $4,340 to the pension fund on Urbanek's behalf.

## III

■] Auto Truck's appeal is, as we said, a narrow one. It does not contest the arbitrator's finding that its discharge of Urbanek for defacing company property violated the CBA, nor does it claim that the company was not required to reinstate

Urbanek and give him back pay. Auto Truck argues instead that the district court should have found that it had fully complied with the arbitrator's award when it proffered the eight working days' back pay to Urbanek in the January 6, 1995 letter. Auto Truck also claims that the union waived its right to challenge the absenteeism discharge by failing to file a grievance within the time period specified by the CBA. Third, it argues that if the arbitrator's award is interpreted as prohibiting the company from disciplining its employee for an unrelated problem, then the award was clearly beyond the arbitrator's power. Finally, it suggests that this court could simply remand the case back to the arbitrator to sort out the inconsistency Auto Truck perceives between an "unconditional reinstatement" for Urbanek and a refusal to reach the absenteeism issue.

█] Local 701 retorts that the district court correctly found that Auto Truck failed to comply with the arbitrator's award when it did not reinstate Urbanek with full back pay. The union maintains that whether it may have waived its right to grieve the May 1994 discipline is a question that can only be decided by an arbitrator, and so the district court correctly refused to address it; to date no one has requested arbitration on that point. Insofar as Auto Truck is attacking the content of Arbitrator Smith's award, the union argues that it is too late. Federal courts in Illinois borrow the 90–day limitation period for challenges to arbitral awards that is found in the Illinois Arbitration Act, Ill.Ann.Stat. ch. 10, ¶ 112(b). See *Int'l Union of Operating Engineers, Local 150, AFL–CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311–12 (7th Cir.1987); *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir.1985). Last, the union generally defends the award and the district court's order enforcing it.

We do not disagree with Auto Truck that an employee who prevails in a labor arbitration proceeding with respect to one ground of discharge does not, by that fact alone, acquire life tenure in the position. Our decision in *Chrysler Motors Corp. v. Int'l Union, Allied Industrial Workers of America, AFL–CIO*, 2 F.3d 760 (7th Cir. 1993), is among the cases establishing this basic proposition. The question, however, is whether that proposition has any application to Urbanek's case. Auto Truck sees the case in exactly that light: it claims that it terminated Urbanek for excessive absenteeism while his defacement discharge was pending. Thus, it asserts, all it had to do was reinstate Urbanek for the period of time between the defacement discharge (April 28, 1994) and the absenteeism discharge (May 10, 1994), pay him his back wages for that period of time, and close the matter.

In essence, this is Auto Truck's position on *how* the arbitral award should be enforced. Local 701, on the other hand, asserts that until the question of the validity of the absenteeism discharge is properly raised before an arbitrator under the CBA, the company must reinstate Urbanek and give him back pay for the full period between his unlawful discharge and the date of his reinstatement. We think that the correct result lies between these two extremes. On the one hand, if the undisputed facts showed that a company had an independent valid reason to discharge an employee—perhaps the employee had been caught redhanded stealing company property, or the employee had assaulted another employee—and that the company went through the proper procedures to effect the employee's termination, then the holding in *Chrysler Motors* indicates that the company could take its chances with a second discharge. If, on the other hand, the facts do not show that independent grounds for discharge existed and that the company actually terminated the employee on the alternate grounds, then the company must comply with the first arbitral award and only take steps afterwards to address any additional infractions the employee may have committed.

Auto Truck rests its entire position on the proposition that it terminated Urbanek's employment on May 10 on the ground of excessive absenteeism. The documents it presents in support of its argument, however, do not support its story. First, the letter it sent to union representative Anderson on May 18 never once says that Urbanek was terminated. Instead, the letter asserts that Urbanek had accumulated excessive absences during the month of April (the end of which, recall, was when he was unlawfully discharged for defacing company property), and it says that the company *would have* sent him another warning notice, which, when combined with the previous warnings, *would have* constituted independent grounds for termination. There is no evidence that the company ever sent any such notice to Urbanek prior to January 6, 1995; indeed, Urbanek denies receiving anything, and his signature is conspicuously missing on the acknowledgment line of the form Auto Truck has included in the record. Furthermore, there is an important difference between "grounds for termination" and a decision actually to terminate an employee; other forms of discipline were also possible for an absenteeism problem.

This is not a trivial omission. The entire grievance structure set up by Article XI of the CBA is premised upon an employee's receiving actual notice of an adverse job action and having the opportunity to file a grievance and move it through the process, up to and including arbitration. Employees have no obligation to file grievances about hypothetical absenteeism notices, which might or might not have led to hypothetical termination decisions. Yet that is all the company proffers here. It never sent Urbanek any kind of notice informing him that it was terminating him on the alternative ground of excessive absenteeism, or that it was formally adding absenteeism as an alternative ground to support the April 28 termination. Indeed, it has not done so to this day, insisting instead that the ambiguous May 18 letter sent to the union did the job. Yet even if

Auto Truck had sent Urbanek the May 10 letter, the letter would have done no more than advise him that three warning notices in a 12–month period was cause for either suspension or discharge. Whether the company ultimately would take either of those actions, or choose in its discretion to take no action at all, was left unclear. Without a firm basis in the record showing that Auto Truck did terminate Urbanek on the alternate ground of absenteeism, Auto Truck cannot avoid complying with the arbitral award that was entered, as written.

We hasten to add that we are making no ruling on the underlying question whether Urbanek's attendance record as of May 10, 1994, would have supported a discharge for excessive absenteeism. If Auto Truck wants to try firing him on that basis, it will have to take its chances and defend its action in the manner outlined in the CBA, including before an arbitrator if it comes to that. Perhaps Urbanek was excessively absent; or perhaps, as with the defacement charge, an arbitrator might find that Urbanek had a valid defense. (We note, for example, that it is unclear whether Auto Truck would be entitled to fire Urbanek for the 1994 absenteeism at this late date. Article XIV of the CBA sets forth what looks to be a limitations period when it says "[a] warning notice shall be valid for one year.") In any event, none of that is before us now.

■ It follows from what we have said thus far that neither Urbanek nor the union waived the right to challenge the absenteeism discharge, for the simple reason that Auto Truck never clearly took this step in a way that would have alerted either one of them to the need to preserve their rights. With respect to Auto Truck's argument about the scope of the arbitrator's award, we agree with Local 701 that this claim came too late in the day. Auto Truck did not file an objection to the award within 90 days, as it was required to do, Ill.Ann.Stat. ch. 10, ¶ 112(b). Further-

more, the reading Auto Truck suggests for the arbitrator's award—that it prohibits the company from disciplining an employee for an unrelated problem—has no basis at all in the award. To the contrary, the arbitrator stressed over and over that he was ruling only on the dispute that had been presented to him, and that his ruling was without prejudice to any future proceedings based on the absenteeism charges. We agree with the district court that the arbitration award was clear on this point, and we thus find that there is nothing that can or should be sent back to the arbitrator for further consideration.

In the end, Auto Truck's failure to give clear notice of its absenteeism charge to Urbanek and the consequent limited scope of the arbitration have left it where it now stands. We agree with the district court's conclusion about the manner in which this arbitration award must be enforced, and we therefore AFFIRM the judgment of that court.